**Baltazor LOPEZ, et al.**

v.

**ART KRAFT CONTAINERS, CORP., et al.**

Civ. A. No. 86–3862.

United States District Court, E.D. Pennsylvania.

May 20, 1987.

Margaret A. Browning, Spear, Wilderman, Sigmond, Borish Endy & Silverstein, Philadelphia, Pa.,for plaintiffs.

Michael L. Banks, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendants.

## MEMORANDUM AND OPINION

KATZ, District Judge.

In this case of first impression, I determine that "up front" bonus payments under collective bargaining agreements are part of the base to calculate overtime even though the union and the employers agreed that there would be no "roll up" of the lump sum payments. The issue is whether the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the FLSA) obligates defendant employers to include lump sum payments in the regular hourly rate of compensation for the purpose of calculating overtime pay. The FLSA requires that an employee who works more than forty hours per week be paid an overtime rate of "one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(2). The "regular rate" at which an employee is paid is defined as "all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e). The statute specifically excludes from the "regular rate":

> payments made for occassional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in furtherance of his employer's interest and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment.

29 U.S.C. § 207(e)(2). Defendants contend the lump sum payment is included within this statutory exception; plaintiffs contend that it is not.

Further issues to be resolved, if liability is established, are the method by which damages are to be calculated, and whether liquidated damages are to be awarded to plaintiffs under 29 U.S.C. §§ 216 and 260.

## FINDINGS OF FACT

1. The United Paper Workers International Union Local 375 (the "Union") represents each of the plaintiffs in this action in collective bargaining. Each of the defendants maintains a collective bargaining agreement with the Union which covers employees engaged in the production of corrugated paper products.

2. Defendants Chesapeake Corrugated Container Company, Ownes-Illinois, Inc., Stone Container Corporation (East Plant) and Willamette Industries negotiated collectively as members of the Philadelphia Container Association (the "Container Association"). From May 1984 through July 13, 1984, the Container Association negotiated with the Union.

3. Stone Container Corporation (West Plant) is essentially the same corporate entity as Stone Container Corporation (East Plant). Stone West was acquired from another company in 1983, however, and was covered by a different collective bargaining agreement. Stone West negotiated a new agreement with the Union in August, 1984 which incorporated the same economic terms as were in the Container Association contract. Two of the principal negotiators for Stone West had been principal negotiators in the Container Association negotiations.

4. Defendant Art Kraft, prior to 1981, was a member of the Container Association. Art Kraft's 1981–1984 collective bargaining agreement expired before that of the Container Association; a new agreement was negotiated effective April 1, 1984.

5. Prior to 1984, the negotiated contracts had provided for annual increases in

hourly wages and in other benefits paid to or on behalf of employees. In the 1984 negotiations the Defendant employers sought new contracts with no increases in the base hourly wage rates and decreased medical benefits.[1] These changes were designed to make employers more competitive with other corrugating companies which were paying lower wage rates.

6. The collective bargaining agreement negotiated between the Container Association and Local 375 called for, at Article 5, a first year bonus of $750.00 payable as of July 1, 1984, and a second year bonus of $500.00 payable as of July 1, 1985. (Joint Exhibit 1). To receive the first year bonus, employees of the Container Association employers had to have been active employees for three months prior to the date of the bonus; to receive the second year bonus, they had to have been active employees for six months prior to the date of the bonus. If Container Association employees who were on lay-off or long term disability returned to active employment within twelve months following the payment of the bonus, they could receive a pro rata share of the two bonuses.

7. The 1984 labor agreement negotiated between Stone West and Local 375 contained bonus and bonus eligibility provisions substantially identical to those of the Container Association contract. (Joint Exhibit 2). The bonus amounts were identical, and the eligibility language, found in the memorandum of agreement, (Joint Exhibit 5) tracks the Container Association language; all parties have interpreted the language as embodying the same eligibility requirements.

8. The remaining defendant, Art Kraft, negotiated with Local 375 for the payment of a first year $500.00 bonus payable to all employees active on the date of the bonus payment, and payable on a pro rata basis to employees on lay-off or long term disability who returned within one year of the date the bonus was paid. (Joint Exhibit 6, Article 5).

9. The lump sum bonuses were negotiated in lieu of first and second year wage increases. Both employer and Union representatives, during the negotiations, discussed the bonuses and recorded such discussions under the subject of wages. Bonuses are also treated under the subject of wages in the contracts themselves, the memoranda of understanding, and the employer negotiating notes. Changes in bonus amounts during the course of negotiations were made in response to, or in conjunction with, proposals relating to cents-per-hour increases. In discussions between parties across the table, bonus amounts were translated into cents-per-hour; the employer's negotiating notes show the same calculations made in employer caucuses and minutes.

10. The lump sum payments were also inducements by the employer to secure the employees' ratification of the contract in the face of minimal wage increases and reductions in medical benefits. Every aspect of a labor agreement is intended to induce ratification and achieve labor peace. To state the obvious—ratification is desirable to create the conditions under which employees will work and defendants can manufacture. Thus, an inducement to ratify is an inducement for future services.

11. The parties agreed during the Union negotiations that there was to be no "roll-up" effect of the lump-sum payments, *i.e.*, there was to be no effect on the base hourly rate in calculating holiday pay, worker's compensation premiums, FICA, FUTA, and overtime. The union negotiators did not consider the implications of the FLSA for the treatment of the lump-sum payments for calculating of overtime. The FLSA issue was never discussed or considered in the negotiations.

## CONCLUSIONS OF LAW

Jurisdiction over claims to recover unpaid overtime payments pursuant to the Fair Labor Standards Act, 29 U.S.C. § 207(a), is found under 29 U.S.C. § 216(b), which provides a private right of action to employees to recover unpaid overtime com-

---

1. The costs of providing medical insurance had escalated from 1981 to 1984.

pensation, along with liquidated damages and attorneys' fees.

## I. *Liability*

Under the FLSA, employees are entitled to overtime compensation, at the rate of one and one-half times the regular rate, for time worked in excess of forty hours per week. Section 207(e) of the FLSA requires inclusion of all remuneration for employment paid to, or on behalf of, the employee, in the regular rate, with the exception of seven listed types of payment.

■ FLSA rights may not be bargained away by union representatives. *Walling v. Harnischfeger Corp.*, 325 U.S. 427, 432, 65 S.Ct. 1246, 1249, 89 L.Ed. 1711 (1945) (negotiated bonus that is includable pursuant to the FLSA must "automatically enter into computation of the regular rate for the purposes of § 7(a) regardless of any contract provision to the contrary"). Additionally, exceptions from the FLSA are to be narrowly construed against the employer. *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959); *Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141, 1143 (3d Cir.1983). The burden of proof is on the employer to establish an exemption. *See Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694, *reh'g denied*, 383 U.S. 963, 86 S.Ct. 1219, 16 L.Ed.2d 305 (1966); *Guthrie, supra* at 1143.

■ The employers in this action rely on 29 U.S.C. § 207(e)(2), which permits the exclusion from the regular rate for:

> payments made for occassional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; *and other similar payments to an employee which are not made as compensation for his hours of employment.* (emphasis added).

The question of whether lump sum payments are to be exempt from inclusion in the regular rate of pay for overtime purposes is one of first impression; thus, the answer will depend primarily on statutory construction.[2]

Plaintiffs and defendants both focus their arguments on the italicized "other similar payments ... not made as compensation for [ ] hours of employment." Plaintiffs contend the lump sum bonuses are compensation for hours of employment; defendants contend they are not. Based on the statute, two questions must be addressed: are the payments not made as compensation for hours of employment, and are they similar in character to payments in the section of the statute? Regarding the first question, the lump sum payment's character as compensation for employment supports including them in the employee's regular rate of employment. The evidence supports the finding that the payments were made in lieu of wage increases. While not tied directly to hours worked, the correlation in the eligibility provisions between work and bonus receipt supports the conclusion that the bonuses were compensation for employment. Employees who were not active—on long term disability or laid off—during the three months prior to the first year bonus date would not receive the full bonus; for the second year bonus, employees had to be active for the six months prior to the bonus date to receive the full bonus. If non-active employees returned to active employment within twelve months of the bonus date, they would receive a pro rata share of the bonus applicable to that year.

Regarding the similarity of the payments, the regulations, in construing the "other similar payments" clause states:

> it is our view that, as a general matter, this is an area in which compliance with the provisions of the Act is best left to the parties to achieve, through litigation or otherwise.

**2.** The Department of Labor Opinion letters on this question are not dispositive. They essentially provide that:

> Because there is so much variation in the form of these bonuses, and because the employees involved are collectively represented,

Department of Labor, Opinion Letter of April 21, 1986.

Since a variety of miscellaneous payments are paid by an employer to an employee under peculiar circumstances, it was not considered feasible to attempt to list them. They must, however, be "similar" in character to the payments specifically described in section 7(e)(2). It is clear that the sum was not intended to permit the exclusion from the regular rate of payments such as bonuses or the furnishing of facilities like board and lodging which, though not directly attributable to any particular hours of work are, nevertheless, clearly understood to be compensation for services.

29 C.F.R. § 778.224 (1986). According to the regulation, the lump sum payment, to be included in this exception, must be "similar" in character to the payments specifically described in section 7(e)(2). This section includes two categories of payments. The first is payments for certain idle hours, when payments are "in the amounts approximately equivalent to the employee's normal earnings for a similar period of time, ... not made as compensation for his hours of employment." *See* 29 C.F.R. § 778.218(a). The lump sum payments are not similar in character to these payments.[3] The second category of exemption is for payments made for the employer's reimbursement of an employee for expenses an employee incurs "on his employer's behalf or where he is required to expend sums solely by reason of action taken for the convenience of his employer." 29 C.F.R. § 778.217. Nor do the lump sum payments share the characteristics of this category.

This regulation specifically provides that the "other similar payments" clause was not intended to exclude bonuses from the regular rate of payment. The lump sum payments can be best characterized as [non-discretionary] bonuses.[4]

For bonuses to be excluded from the regular rate of pay, they must qualify for exclusion under § 207(e)(3) of the statute which requires that "both the fact that payment [be] determined *at the sole discretion* of the employer at or near the end of the period and *not pursuant to any prior contract,* agreement, or promise causing the employee to expect such payments regularly." 29 U.S.C. § 207(e)(3) (emphasis added). Since the lump sum payments at issue in this case are non-discretionary, and are given pursuant to a contract, they do not qualify for exclusion under § (e)(3). The fact that Congress chose to deal with excludable bonuses explicitly in § (e)(3) implies that Congress did not intend those bonuses that do not fall within that exclusion to be excludable.

*Conclusion*

Based upon the interpretation of the relevant statute, and the characteristics of the lump sum payments as compensation for hours worked, these sums are to be included in the employee's regular rate of pay for purposes of statutory overtime calculation.

## II. *Liquidated Damages*

■■■ Plaintiffs have requested an award of liquidated damages. In 1947, Congress amended, the then mandatory award of liquidated damages for violations of the Fair Labor Standard Act (29 U.S.C. § 216(b)) to provide that:

[I]f the employer shows to the satisfaction of the court that the act or omission giving rise to [an action under §§ 206 or

---

**3.** *See also* 29 C.F.R. § 778.218(d) (describing "other similar cause" as including "only absences of a nonroutine character which are infrequent or sporadic or unpredictable").

**4.** The Random House Dictionary defines "bonus" as: "1. something given or paid over and above what is due. 2. a sum of money granted or given to an employee, ..., over and above his regular pay, usually in appreciation for work done, length of service, accumulated favors, or the like...." Random House College Dictionary 154 (revised ed. 1982). Plaintiffs' briefs refer to the sum as "contractual bonuses." Plaintiffs' Pre-Trial Memorandum of Law at 1.

The defendants' brief refers to the sum both as "lump sum payments," and as "lump-sum bonuses." Defendants' Post-Trial Memorandum of Law at 1, 7. The defendants seek to characterize the lump sum payments "as an inducement to secure ratification of contracts." This characterization is consistent with the dictionary's example of a bonus: "Every purchaser of a pound of coffee received a box of cookies as a bonus." *Id.* The box of cookies can be viewed as an inducement to purchase the coffee, as the lump sum payments can be viewed as an inducement to ratify the contract.

207 of the FLSA] was in good faith and that he had reasonable grounds for believing that his act or omission was not in violation of the Fair Labor and Standards Act of 1938 as amended, the court may, in its own discretion, award no liquidated damages or award an amount thereof not to exceed the amount specified in § 216 of this title.

Before the District Court's can invoke its discretion not to award liquidated damages, the employer has the " 'plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.' " *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir.1982), *quoting Rothman v. Publicker Industries*, 201 F.2d 618, 620 (3d Cir.1953). To meet its burden, the employer must affirmatively establish a subjective defense—that he acted in good faith by attempting to ascertain the Act's requirements, *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 129 (3d Cir.1984), and an objective defense—that there were reasonable grounds for believing the employer was in compliance with the Act. *Marshall, supra* at 753.

█ The employers have met both the good faith requirement that they "ha[d] an honest intention to ascertain and follow the dictates of the Act," *Williams, supra* at 129, as well as the objective reasonableness requirement. During the contract negotiations, the attorneys and negotiators on both sides understood that contractually, the lump-sum payments were not to be included in the base rate for the purpose of calculating overtime pay. The employers in the labor negotiations were represented by experienced labor counsel upon whom the employers relied to provide advice on legal obligations.

The Union's FLSA question first raised in September, 1984, posed a unique question of statutory interpretation. Each of the employers made an honest attempt to ascertain and follow the dictates of the FLSA by contacting their counsel and requesting advice. Counsels O'Reilly and Stern reviewed the statute and the regulations. Mr. O'Reilly reviewed Department of Labor opinion letters, and contacted the Department of Labor informally to confirm his own interpretation of the Act. The attorneys were aware that other employers had made hundreds of similar lump sum payments without including them in the regular rate for the purpose of calculating overtime. The two counsel discussed the issue, and concluded that the Union's interpretation of the FLSA was legally incorrect.

Both counsel responded to Mr. Hasenauer, stating that the Union's interpretation of the FLSA was incorrect, and that the employers would not include the lump-sum payments in the regular rate for the purpose of calculating overtime.[5]

I find that the above evidence demonstrates that the employer was acting in good faith, and had a reasonable basis for interpreting the FLSA as not requiring the lump sum payments to be included in the rate of pay for calculating overtime. I will thus exercise my discretion not to award liquidated damages.

### III. *Damage Calculation*

When it is not possible to identify a bonus with a particular work week, the regulations direct me to adopt a reasonable and equitable method of allocation.[6] I find the

---

**5.** Neither Mr. Hasenauer nor any other employee or Union representative revived the issue or sought clarification of the employers' positions during the 22 months between Mr. Hasenauer's inquiry and this action's commencement.

**6.** The FLSA does not specify what this method should be. The Department of Labor, in 29 C.F.R. § 778.207 describes a method of calculation appropriate for bonuses that cannot be identified with particular work weeks, as follows:

(b) *Allocation of bonuses where bonus earnings cannot be identified with particular work weeks.* If it is impossible to allocate the bonus among the work weeks of the period in proportion to the amount of the bonus actually earned each week, some other reasonable and equitable method of allocation must be adopted. For example, it may be reasonable and equitable to assume that the employees

following to be a reasonable and equitable method to use to calculate the lump sum payments into the regular rate for purposes of overtime: The bonus amount should be allocated to the twelve months following the date of each bonus payment, based on the finding that the bonuses were negotiated in lieu of wage increases. The bonus amount should then be divided first by the number of weeks in the twelve month period (52) and then by forty (the number of hours above which statutory overtime is to be paid). The resulting average hourly increase should be multiplied by .5, (based on the statutory overtime of time and a half) and then multiplied by the number of statutory overtime hours (hours in excess of 40) worked in each work week by the employee to produce the damages calculation for that particular week. This method of calculating damages is consistent with the interpretation of the lump sum payment as compensation for hours worked.

## ORDER

AND NOW, this 20th day of May, 1987, it is hereby ordered that, there being no just reason for delay, judgment as to liability is entered in accordance with the attached memorandum, in favor of plaintiffs and against defendants determining that the lump sum payments at issue are to be included in the regular rate of pay for the purpose of calculating overtime pay; and in favor of defendants and against plaintiffs on plaintiffs' claim for liquidated damages. U.S. Magistrate Edwin E. Naythons is designated to serve as a master, pursuant to Title 28 U.S.C. § 636(b)(2), and Rule 53, to make the difficult computation of damages, in accordance with the attached memorandum, after receiving evidence and holding such hearings as are necessary. The Master shall prepare and file a report with his findings of fact and conclusions of law in accordance with Rule 53(e).

---

earned an equal amount of bonus each week of the period to which the bonus relates, and if the facts support this assumption additional compensation for each overtime week of the period may be computed and paid in an amount equal to one half of the average hourly increase in pay resulting from bonus allocated to the week, multiplied by the number of statutory overtime hours worked in that week. Or, if there are facts which make it inappropriate to assume equal bonus earnings for each work week, it may be reasonable and equitable to assume that the employee earned an equal amount of bonus each hour fo the pay period and the resultant hourly increase may be determined by dividing the total hours by the number of hours worked by the employee during the period for which it is paid. The additional compensation due for the overtime work weeks in the period may then be computed by multiplying the total number of statutory overtime hours worked in each such work week during the period by one-half this hour increase.