842 F.2d 1456
 28 Wage & Hour Cas. (BN 849, 56 USLW 2572,
108 Lab.Cas. P 35,044
 MINIZZA, Anthony, et al.,
v.
STONE CONTAINER CORP. CORRUGATED CONTAINER DIV. EAST PLANT,
Chesapeake Corrugated Co., Owens-Illinois, Inc.,
Stone Container Corp. West Plant, Stone
Container Corp. East Plant, Appellants.
 No. 87-1348.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 17, 1987.
Decided March 28, 1988.
Rehearing and Rehearing In Banc Denied April 26, 1988.
 
 Michael L. Banks (argued), Timothy P. O'Reilly, Morgan, Lewis & Bockius, Philadelphia, Pa., for appellants.
 Margaret A. Browning (argued), Mariann E. Schick, Spear, Wilderman, Sigmond, Borish, Endy and Silverstein, Philadelphia, Pa., for appellees.
 Michael Hamilton, Nashville, Tenn., for United Paperworkers Int'l Union, AFL-CIO, CLC as amicus curiae.
 Michael B. Weir, Mark E. Brossman, Donald W. Rose, Ronald Richman, Chadborne & Parke, New York City, for American Paper Institute, Inc. as amicus curiae.
 Peter G. Nash, Dixie L. Atwater, Frances C. Moran, Ogletree, Deakins, Nash, Smoak and Stewart, Washington, D.C., Stephen A. Bokat, Paula J. Connelly, Washington, D.C., for Chamber of Commerce of the U.S. as amicus curiae.
 Before GIBBONS, Chief Judge, SLOVITER and COWEN, Circuit Judges.
 OPINION OF THE COURT
 COWEN, Circuit Judge.
 
 
 1
 This appeal arises from an order of the district court, which required that defendant employers' payment of two lump sum amounts, pursuant to the terms of a collective bargaining agreement be included in the "regular rate" for purposes of calculating overtime rates under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Sec. 201 et seq. Since we conclude that these payments are excluded from regular rate calculations because they are similar to the types of payments excluded under 29 U.S.C. Sec. 207(e)(2), we will reverse.
 
 I.
 
 2
 This controversy arose out of the filing of eleven separate, albeit identical, lawsuits by plaintiff employees who are members of the United Paperworkers International Union Local 375 ("Union"). The employees alleged that their employers violated section 7(a) of the FLSA[1] by excluding certain lump sum payments they received pursuant to the terms of collective bargaining agreements between the Union and the employers from their regular rate of compensation in calculating overtime pay.
 
 
 3
 The employers were each parties to collective bargaining agreements with the Union and, with the exception of Stone West,[2] joined together as the Philadelphia Container Association for the purpose of negotiating a new agreement with the Union in May of 1984. Prior agreements had included annual increases in hourly wages and other benefits. In these negotiations, however, the employers sought a new agreement with a freeze on hourly wages and a cap on medical insurance costs.[3]
 
 
 4
 After considerable bargaining and a rejection of one proposal by vote of the Union rank and file, an agreement was reached between the parties. One of the terms of the new contract was the payment in the first year of the agreement of a lump sum of $750.00, payable on July 1, 1984, and an additional payment in the second year of the contract of $500.00, payable on July 1, 1985.[4] To be eligible for the first year payment, the employee had to have been an active employee for three months prior to the date of the payment. In order to qualify for the second year payment, the employee had to have six months active status prior to the payment date. Employees on long-term disability or lay-off returning within 12 months of the bonus date received a pro-rata share.
 
 
 5
 The lump sum payments were negotiated as a trade-off for wage increases and also served as an inducement to the employees to ratify the agreement, given the employers' minimal wage concessions and insistence on including medical deductibles. Although similar payments of a lesser amount were included in the first agreement rejected by the employees, the substantial increase in the amount of the sums which were to be paid on an earlier schedule than first proposed, along with the small ten-cent-per-hour wage increase in the third year of the contract, were sufficient inducement to convince the Union members to ratify the second agreement.
 
 
 6
 The parties agreed that there would be no "roll-up" effect of the lump-sum payments, that is, the amounts would not be included in wages for purposes of calculating holiday pay, worker's compensation premiums, FICA, FUTA, and overtime. Nevertheless, in September of 1984, counsel for the Union expressed his opinion that the payments should be included in the base rate for purposes of calculating overtime. The employers disagreed and therefore refused to calculate overtime using these sums.
 
 
 7
 In March of 1985, the Union's parent organization, United Paperworkers International Union, requested an advisory opinion from the Wage and Hour Division of the Department of Labor regarding the excludability of these payments from overtime calculations. In a letter dated April 21, 1986, however, the Department of Labor responded equivocally, stating, in part:Because there is so much variation in the form of these bonuses, and because the employees involved are collectively represented, it is our view that, as a general matter, this is an area in which compliance with the provisions of the Act is best left to the parties to achieve, through litigation or otherwise.
 
 
 8
 App. at 36. The members thereafter initiated suit and the eleven separate cases were consolidated for all purposes into Civil Action No. 86-3862. The parties stipulated to a bifurcation of the issues of liability and damages. After a trial, the district court found for plaintiffs on the question of liability, Lopez v. Art Craft Containers, Corp., 660 F.Supp. 404 (E.D.Pa.1987), the court determining that the payments did not fall within any exclusion contained in the FLSA, and that the employers therefore should have included the payments in overtime calculations. Thereafter, the Court determined the method by which damages would be calculated, and by stipulation the parties agreed that damages would be awarded based on this or whichever formula was upheld on appeal. The Court's order became final on June 19, 1987. The employers appeal to this Court. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291.
 
 II.
 
 9
 On appeal the employers argue that the district court erred when it determined that the payments made pursuant to the collective bargaining agreement under these facts were not subject to exclusion from the "regular rate" under one of the exemptions to the FLSA for purposes of calculating overtime. The district court's findings of fact in that regard may not be disturbed unless clearly erroneous. Anderson v. City of Bessemer, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). However, our review of the district court's interpretation and application of the statutory language is plenary. Creque v. Luis, 803 F.2d 92, 93 (3d Cir.1986). We turn to an examination of the reasons underlying the district court's decision.
 
 III.
 A.
 
 10
 The FLSA requires that employees working more than forty hours a week be compensated at a rate one and one-half times their regular rate for any hours exceeding forty. 29 U.S.C. Sec. 207(a)(1). The scope of the term "regular rate" is defined to include "all remuneration for employment paid to, or on behalf of, [an] employee." Id. Sec. 207(e). However, there are several exceptions to the otherwise all-inclusive rule set forth in section 207(e). As the district court correctly recognized, these exceptions are narrowly construed, Mitchell v. Kentucky Finance Co., 359 U.S. 290, 295-96, 79 S.Ct. 756, 759-60, 3 L.Ed.2d 815 (1959); Guthrie v. Lady Jane Collieries, Inc., 722 F.2d 1141, 1143 (3d Cir.1983), and the employer bears the burden of establishing an exemption, Idaho Sheet Metal Workers, Inc. v. Wirtz, 383 U.S. 190, 209, 86 S.Ct. 737, 749, 15 L.Ed.2d 694 (1966); Guthrie, 722 F.2d at 1143. Nevertheless, we must differ with the conclusion drawn by the district court that the payments were not exempted for several reasons.
 
 
 11
 First, as one of the bases for its holding, the district court determined that the payments were compensation for hours of employment, stating: "While not tied directly to hours worked, the correlation in the eligibility provisions between work and bonus receipt supports the conclusion that the bonuses were compensation for employment." 660 F.Supp. at 407. The district court found evidence in the contract negotiations that the payments were tied to proposals for cents-per-hour increases, and concluded that the payments were made in lieu of wage increases.
 
 
 12
 The employers aver that this determination is irrelevant to an analysis under the FLSA. While we cannot say that the finding of a trade-off of the payments for a smaller increase in wages was irrelevant to the issue before the district court, it is of little help in settling the ultimate question whether the payments may be excluded. All remuneration by an employer not paid directly in dollars-per-hour comes at the expense of wage increases. Employers have a finite amount to spend for the labor component of their product or service. This sum can be allocated solely as compensation on an hourly basis (in which event the payment would be fully includable in the "regular rate"), or it can assume any number of other forms, including insurance or medical benefits, paid vacations, etc. (in which case the payments may or may not be includable), in any ratio the parties care to set. However, as there is a limit to the labor cost component, there will always be a trade-off between wages and wage substitutes, such as these payments. Therefore, to state as the district court did that the payments at issue were made in lieu of wage increases is true, but that does not necessarily preclude their falling within the language of the exclusions contained in section 207(e), since certain wage substitutes are excluded under this section.[5]
 
 
 13
 As an additional factor in its determination that the payments were compensation for hours of employment, the court below looked to the fact that there was a time-of-service-related work prerequisite for receiving the payment; that is, an employee could not receive the payment unless he had worked for a minimum period of time preceding the payment date. The employers argue that the eligibility standards do not convert the payments into compensation for employment because the employees need not have actively engaged in employment prior to receiving the payment, nor were they required to continue employment after receiving the lump sum. In addition, the employers point to testimony which they argue establishes that the eligibility requirements were not tied to hours worked and were inserted to hold down labor costs.
 
 
 14
 In our view, the fact that the entitlement to these payments was dependent on an employee's having been with the employer for a certain period of time preceding the payment does not support the conclusion that the payments were compensation for employment. A review of the eligibility terms reflects a requirement only that a payee achieve the status of an active employee for a specified period of time prior to receipt. It does not matter how many hours an employee worked during that period, nor how many hours he might work in the future. The employee could even terminate his employment immediately upon receiving the payment and retain the payment.
 
 
 15
 Furthermore, the undisputed testimony reflects that the eligibility requirements were included solely to hold down the employers' costs. App. at 510-11. As the employers note, all the employees could have been made eligible for the payment. However, this alternative would have cost the employers more than if they were able to exclude some of the employees, as the employers chose to do. Ironically, if the employers had paid the lump sum to all employees there could be no argument that the eligibility conditions were tied to compensation for hours of employment as there then would be no requirements. In that case, the attention would be focused solely on the character of the payments, which we believe to be the key inquiry in this case. See Section III.B., infra. We see no reason why we should come to a different conclusion where the evidence reflects that requirements were imposed solely for reasons of cost containment, and were not an attempt to tie payments to compensation for services rendered.
 
 
 16
 In light of the evidence that the eligibility requirements were not meant to serve as compensation for service, but rather to reduce the employers' costs, and considering that the eligibility terms themselves do not require specific service, we conclude that the eligibility terms do not lend support to the conclusion that the payments are compensation for employment. Thus, we reject the district court's determination of this issue.[6]
 
 B.
 
 17
 The second reason underlying the district court's decision was its determination that as a matter of statutory interpretation the payments were dissimilar in character to those listed in section 207(e)(2), the only exception arguably applicable under these facts. This particular exclusion exempts from the definition of "regular rate"
 
 
 18
 payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment; ...
 
 
 19
 29 U.S.C. Sec. 207(e)(2) (1982) (emphasis added). The phrase "other similar payments" is further clarified in the Code of Federal Regulations:
 
 
 20
 Section 7(e)(2) also authorizes exclusion from the regular rate of "other similar payments to an employee which are not made as compensation for his hours of employment." Since a variety of miscellaneous payments are paid by an employer to an employee under peculiar circumstances, it was not considered feasible to attempt to list them. They must, however, be "similar" in character to the payments specifically described in section 7(e)(2). It is clear that the clause was not intended to permit the exclusion from the regular rate of payments such as bonuses or the furnishing of facilities like board and lodging which, though not directly attributable to any particular hours of work are, nevertheless, clearly understood to be compensation for services.
 
 
 21
 29 C.F.R. Sec. 778.224(a) (1987).
 
 
 22
 The district court, relying on the explanation embodied in the regulation, decided that the payments to be included in the phrase "other similar payments" could be similar in character only to the two categories of payments specifically listed in section 207(e)(2), pay for idle hours or reimbursements for work-related expenses. Since the court was of the opinion that the payments could not be classified as either of these kinds of payments, they did not fall within the exclusion. We find this interpretation erroneous because it focuses the analysis on the specific type of payment rather than whether the type of payment is compensation for hours worked or service rendered. Instead, we interpret the phrase "other similar payments" by reading each clause of section 207(e)(2) separately. The phrase "other similar payments ... not made as compensation for hours of employment" does not mean just other payment for idle hours or reimbursements, the two types of payments set forth in the two preceding clauses of the section, but payments not tied to hours of compensation, of which payments for idle hours and reimbursements are only two examples. This interpretation gives independent meaning to the third clause. Indeed, it makes little sense to read the third clause as only an embellishment of the first two, since those two clauses contain "other similar" language as well.[7]
 
 
 23
 The employers assert, and we agree, that the payments are included within the highlighted language of section 207(e)(2) because they are similar in character to the other payments set forth in that section; that is, they are not payments relating to hours of employment or service. The facts show that these payments were nothing more or less than an inducement by the employers to the employees to ratify the agreement on the terms proposed by the employers. The employers, obviously not wanting to pay a greater number of employees than they had to in order to achieve ratification, targeted that minimum number of employees necessary to achieve that goal, and therefore structured the eligibility requirements accordingly.[8] If the payments were made as compensation for hours worked or services provided, the payments would have been conditioned on a certain number of hours worked or on an amount of services provided. However, no such requirement was agreed to by the parties.
 
 
 24
 In sum, we must reject the district court's determination that the payments would not fall within the language of section 207(e)(2). To the contrary, we conclude the payments here share the essential characteristic with the other types of compensation specifically included in section 207(e)(2) of not being compensation for hours worked or services rendered. Accordingly, they fall within the language of the exception and are excluded for purposes of calculating overtime compensation rates.
 
 C.
 
 25
 As a third basis for its holding, the district court concluded that since the payments were made to induce ratification of the agreement, they could most readily be characterized as bonuses. Since the payments were not discretionary and were paid pursuant to a prior agreement, the district court reasoned they fell outside the exclusion contained in section 207(e)(3). The court below also found significant the fact that Congress addressed excludable bonuses in section 207(e)(3) only, implying that it meant to include all other types of bonuses not falling within section 207(e)(3).
 
 
 26
 In light of our holding that the payments are excluded from overtime calculations under section 207(e)(2), we need not address the district court's characterization of the payments as bonuses.[9] We turn to this portion of the district court's analysis, however, to point out that while we agree with the district court that the payments in this case would not fall within the language of section 207(e)(3), the fact that Congress did not include other types of bonuses in this section does not mean that these payments would necessarily have been excluded.
 
 
 27
 The district court's comment in this regard infers that these types of payments were considered by Congress and specifically rejected. This is unsubstantiated speculation. We have found nothing to indicate that Congress was aware of these types of payments at the time the exemption was enacted, and nonetheless decided to exclude them. It would be presumptuous to conclude that Congress meant to exclude payments such as these by not including them within the language of that section.
 
 
 28
 A large number of collective bargaining agreements throughout the country contain payments similar to those at issue in this case, and these provisions are becoming more common. Collective Bargaining Negot. & Cont. (BNA) No. 1091, at 18:451-52 (1987). We do not address whether all such payments are or are not excludable; that finding depends on the facts of the particular case. A fair assessment of the payments made in this case, however, reflects that the payments were not given as compensation for hours worked or services rendered. The FLSA was not intended to emasculate the ability of labor and management to be creative in resolving labor disputes in a manner which is mutually beneficial from an economic standpoint to all parties involved in such negotiations. The FLSA should not be used in this case as an impediment to creative and innovative collective bargaining which brings labor peace.[10]
 
 IV.
 
 29
 We conclude that the lump sum payments in this case should not be considered compensation for hours of employment, and that they fall within the phrase "other similar payments" under 28 U.S.C. Sec. 207(e)(2). Accordingly, these payments are excluded from the definition of "regular rate" for purposes of calculating overtime pay under the Fair Labor Standards Act. We therefore will reverse. The district court will enter judgment in favor of the employers. Each party to bear its own costs.
 
 
 30
 SLOVITER, Circuit Judge, dissenting.
 
 
 31
 I respectfully dissent from the majority's decision reversing the district court's judgment requiring the employers to include the lump sum bonuses they paid to the employees as part of their regular rate of pay in calculating overtime. I do so for three reasons: first, I believe the majority has given insufficient deference to the district court's factual findings; second, I cannot agree with the majority's construction of the statute; and third, I fear that this decision places the court's imprimatur on a method of evading the FLSA and opens the door to widespread evasion.
 
 I.
 
 32
 As the majority notes, the Department of Labor (DOL), the agency that has the responsibility for enforcing the Fair Labor Standards Act, has taken the position that the includability of bonuses in employees' "regular rate" requires an ad hoc determination based on the particular circumstances applicable in each case. It follows that a somewhat more extensive review of the negotiations leading to the 1984 agreement may be useful.
 
 
 33
 The negotiations were principally conducted on the employers' side by the Philadelphia Container Association, which represented all the defendants who remain as defendants here with the exception of Stone Container Corporation, West Plant (Stone West). Although the prior agreements with Local 375 (Union) had provided for annual wage increases, the employers this time, because of an adverse economic climate in the country and in the paper industry, sought to get the Union to hold the line on wages and make concessions in the medical benefits programs. As could be expected, the Union resisted.
 
 
 34
 At first, the employers requested a two-tiered wage system (lower rates for new hires) and the Union proposed an increase of $1.25 per hour for each year of the contract. The employers then proposed a bonus of $250 to be paid during the second and third years of the contract, with "no other wage or salary adjustments during the life of the Agreement." App. at 94 (emphasis added). Payment of a bonus in lieu of a wage increase can be advantageous to an employer because the parties can also agree not to factor the payment into the value of benefits such as vacation and holiday pay, i.e., to preclude a "roll-up" effect, and because subsequent contract negotiations generally begin with the base rate of pay, which does not reflect the bonus.
 
 
 35
 The initial agreement reached by the negotiators here provided for a lump sum bonus of $500 at the beginning of the first year, $250 at the second, $200 at the third, with wages frozen the first year, a 15 cents per hour increase in the second, and a 40 cents per hour increase in the third, as well as a $250 deductibility in medical plans. This agreement was rejected by the employees' vote.
 
 
 36
 Ultimately, the new three-year collective bargaining agreement reached on July 13, 1984 provided for a lump sum $750 bonus to employees on July 1, 1984, which was the starting date of the new contract, and $500 on July 1, 1985, one year later. In addition, the wage increase for the third year was raised to $.50 per hour and the employees agreed to extend the agreement to 36 months (rather than 33 months). To be eligible for the $750 first-year bonus, an employee had to be actively employed for the three months prior to the date of payment; to be eligible for the $500 second-year bonus, an employee had to be actively employed for the six months prior to the date of the bonus. App. at 45. Anyone who was not on active status on the date of the bonus but who returned from sick leave or was recalled from layoff in the 12 months following that date received a pro-rata share of the bonus, according to the number of months worked in that year. Id.
 
 
 37
 Months later, because counsel for the Union had concluded that the Fair Labor Standards Act required the lump sum payments to be allocated on an hourly basis for use in computing overtime compensation, the Union wrote to the Administrator of the Wage and Hour Division of the Labor Department in March 1985, requesting his opinion on whether the FLSA required the inclusion of the lump sum payments in the employee's "regular rate" for purposes of overtime compensation. The Deputy Administrator's response, dated April 21, 1986 ("1986 Opinion Letter"), concluded that it was a matter for the parties to work out, "through litigation or otherwise." App. at 36. The Union then filed this lawsuit.
 
 
 38
 After trial, the district court, sitting as the factfinder, found as one of its enumerated Findings of Fact that the payments were made "in lieu of wage increases"--that the bonuses were discussed at the contract negotiations under the subject of wages and recorded as such, were translated into cents-per-hour in the discussions between the parties, and that the employer changed the bonus amounts it offered in response to, or in conjunction with, proposals for cents-per-hour increases. App. at 8. In its subsequent discussion, the district court stated that, "[w]hile not tied directly to hours worked, the correlation in the eligibility provisions between work and bonus receipt supports the conclusion that the bonuses were compensation for employment." App. at 11.
 
 
 39
 There is more than sufficient support in the record for the district court's findings that the bonuses were in lieu of wages to survive the "clearly erroneous" standard of review. The proposal offered to the Union by the Container Association, bargaining on behalf of the employers, listed its lump sum bonus proposal under the heading "Wages". App. at 94. The language of the sentence following that bonus proposal, which states that "[t]here shall be no other wage or salary adjustments during the life of the Agreement," id. (emphasis added), shows that the employer thought of the proposed bonuses as a wage or salary adjustment. Both the first and second Memorandum of Agreement between the negotiating parties listed the bonuses under the topic "Wages", App. at 37, 62, and the final contracts negotiated list the bonuses under the title "Wages and Bonuses", App. at 45, or simply "Wages", App. at 75.
 
 
 40
 The majority, although never explicitly denominating as clearly erroneous the district court's finding that the bonuses were made in lieu of wage increases, nonetheless fails to give that finding the weight that it requires. Thus, for example, the majority states that "[t]he facts show that these payments were nothing more or less than [a ratification] inducement by the employers to the employees," and not payments relating to hours of employment or service. Maj. op. at 1462. However, the district court found that the bonuses were no different than other terms of the agreement because "[e]very aspect of a labor agreement is intended to induce ratification and achieve labor peace." App. at 8. It explained further, "an inducement to ratify is an inducement for future services." Id. The majority's finding that the eligibility requirements were simply to achieve ratification is a finding that we, as appellate judges, are not free to make since it is inconsistent with the finding made by the district court, supported by the record, that the bonuses were "compensation for employment." App. at 11.
 
 II.
 
 41
 The majority concludes that the bonuses here are exempt from inclusion in the computation of the employees' "regular rate" pursuant to section 7(e) of the Act, 29 U.S.C. Sec. 207(e). The definition of "regular rate" expressly includes "all remuneration for employment paid to, or on behalf of, the employee," but sets forth seven exclusions to the regular rate, which include, inter alia,
 
 
 42
 (2) payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses ... properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment;
 
 
 43
 (3) Sums paid in recognition of services performed during a given period if either, (a) both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly; [ (b) omitted].
 
 
 44
 29 U.S.C. Sec. 207(e) (2), (3) (emphasis added).
 
 
 45
 The majority accepts the employers' argument that the bonuses fall within section (e)(2) above and are therefore "similar payments" because they share the character of the other payments set forth in that "they are not payments relating to hours of employment or service." Maj. op. at 1462. Of course, if the district court's contrary finding is given appropriate weight, the majority's conclusion must fall.
 
 
 46
 It is important to note that a payment may be compensation for an employee's "hours of employment" even if it is not tied to specific hours worked. The DOL regulations in this regard provide:
 
 
 47
 It is clear that the ["other similar payments"] clause was not intended to permit the exclusion from the regular rate of payments such as bonuses or the furnishing of facilities like board and lodging which, though not directly attributable to any particular hours of work are, nevertheless, clearly understood to be compensation for services.
 
 
 48
 29 C.F.R. Sec. 778.224(a) (1987) (emphasis added). Another regulation reinforces this interpretation, since it provides: "Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay. Attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made ... must be included in the regular rate of pay." 29 C.F.R. Sec. 778.211. The DOL's interpretation of the statute as not requiring that compensation be pegged to a particular time period or number of hours worked is owed deference. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-44, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984).
 
 
 49
 Another reason these bonuses cannot be viewed as falling within the section 7(e)(2) exclusion is that they are not "similar" to the other payments specified in the other clauses of section 7(e)(2). As explained by the regulations, the first clause of section 7(e)(2), which speaks of payments made for "occasional periods" such as holidays, refers only to "absences of a nonroutine character which are infrequent or sporadic or unpredictable," 29 C.F.R. Sec. 778.218(d) (1987), which was not the case here. Patently, as well, the bonuses were not "similar to" the reimbursement of expenses detailed in the second clause of section 7(e)(2). If the third clause of section 7(e)(2) was intended to encompass an independent class of payments, as the majority suggests, it is unlikely Congress would have defined that class only as "similar" to those in the two preceding clauses.
 
 
 50
 Finally, it is unlikely that Congress would have intended bonuses to be excluded under section 7(e)(2) when it provided another exclusion, section 7(e)(3), which deals directly with payments construed by DOL as covering certain bonuses. Significantly, section 7(e)(3) only excludes bonuses given at the total discretion of the employer, which was clearly not the case with these negotiated payments. DOL's interpretative regulation states:
 
 
 51
 The bonus, to be excluded under section 7(e)(3)(a), must not be paid "pursuant to any prior contract, agreement, or promise." For example, any bonus which is promised to employees upon hiring or which is the result of collective bargaining would not be excluded from the regular rate under this provision of the Act.
 
 
 52
 29 C.F.R. Sec. 778.211 (emphasis added).
 
 
 53
 I thus find no statutory support for the majority's position that the statute requires exclusion from the "regular rate of pay" of bonuses bargained for and paid to employees who must have worked a specified period before they could be eligible therefor.
 
 III.
 
 54
 My overriding concern with the majority's opinion in this case of first impression is that it will open the doors to widespread evasion of the overtime provisions of the Fair Labor Standards Act. Indeed, the brief for one of the amici notes that it has been reported that "one-third of all nonconstruction bargaining agreements negotiated in 1986 contain provisions for some form of lump sum payments." Brief of Amicus Curiae Chamber of Commerce at 4 (citing Collective Bargaining Negotiations and Contracts (BNA), 18:451-452). If the lump sum payments referred to are, as in this case, substitutes for compensation for services performed, then the era of evasion is already upon us. I find it difficult to believe that Congress envisoned that the bargaining parties could agree to substitute non-discretionary, collectively bargained bonuses in lieu of wages and thereby decrease the amount of overtime that must be paid to the workers. I would instead affirm the judgment of the district court.
 
 
 
 [1]
 Section 207(a)(1) states:
 (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
 29 U.S.C. Sec. 207(a)(1) (1982).
 
 
 [2]
 Stone West, at the time recently purchased from another entity and operated apart from the Stone East plant, negotiated a separate agreement with the Union on the same economic terms
 
 
 [3]
 The employers assumed this position in an effort to make themselves more competitive with rivals who were paying lower wages
 
 
 [4]
 The agreement also provided for minimal hourly wage increases in the second and third years of the agreement of 15 and 50 cents per hour, respectively, a decrease in the wage rate for newly hired employees (creating a two-tiered wage rate), and a $250.00 deductible on the health insurance plans. The term of the agreement was also extended from 33 to 36 months
 
 
 [5]
 Indeed, as noted by the employers, the Department of Labor in an opinion letter dated October 15, 1981, took the position that certain lump sum payments would not be included in overtime calculations under section 207(e)(2). The employers argue strenuously that, based on this letter opinion and subsequent reaffirmations of this 1981 letter, the DOL has assumed a favorable position with respect to the payments herein. We cannot accept this argument since it is obvious in the DOL's 1986 opinion letter that the Department, after considering these particular payments, did not take a position either way. See infra note 6. However, the DOL's 1981 letter opinion does lend support to the employers' argument that lump sum payments can be included within the language of section 207(e)(2), depending on the payment's characteristics
 
 
 [6]
 The Department of Labor's opinion letter dated April 21, 1986, which both the employers and the employees maintain supports their respective positions, suggests that any payment tied to a past or future period of employment would not be excludable. However, as noted above, the DOL refused to take a position on these payments, preferring to let the parties settle any dispute through litigation or otherwise. While an administrator's determination under the FLSA is entitled to some deference, see Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944); see also Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980) (federal agency's interpretation of a statute over which it has been given administrative duties is entitled to great deference), Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) (same), we find the administrator's letter to be equivocal and therefore unpersuasive either way
 
 
 [7]
 The first clause states: "[P]ayments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; ..." 29 U.S.C. Sec. 207(e)(2) (emphasis added). The second clause reads: "[R]easonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; ..." Id. (emphasis added)
 
 
 [8]
 The selective purpose of the payments is evident in the fact that employees similarly situated except for length of service were treated differently with respect to entitlement to these payments
 
 
 [9]
 Our determination that the payments fall within the exclusion in (e)(2) would not change even if we term the payments "bonuses," since what the payments are termed is not important. Walling v. Harnischfeger Corp., 325 U.S. 427, 430, 65 S.Ct. 1246, 1248, 89 L.Ed. 1711 (1945). What is important is the substantive characterization of the payments, which is not compensation for hours worked but rather as an inducement for ratification
 
 
 [10]
 In light of our holding, we need not reach the employers' argument that the district court erroneously calculated damages