[No. 41818-1-I.    Division One.    June 28, 1999.]

DÉJÀ VU-EVERETT-FEDERAL WAY, INC., *Appellant*, v. THE CITY OF FEDERAL WAY, *Respondent*.

*Jack Ross Burns* of *Law Offices of Jack R. Burns, P.S.*, for appellant.

*Stephen Alan Smith* and *Robert Bertelson Mitchell* of *Preston, Gates & Ellis*, for respondent.

BECKER, J. — A Federal Way ordinance requires erotic

dancers in adult cabarets to stay at least four feet away from patrons. A four-foot rule does not violate either the state or federal constitution. Earlier decisions clearly preclude Déjà Vu's present challenge to the Federal Way ordinance. The action is frivolous.

## FACTS

Déjà Vu is in the adult entertainment business. It operates adult cabarets in several locations in King County. In 1994 Déjà Vu (Bellevue) along with several other owners of adult cabarets filed suit in King County Superior Court to have certain ordinances declared unconstitutional. One provision at issue required dancers to maintain a minimum distance of four feet from patrons. In April of 1995, after a six-day trial, the superior court upheld the four-foot minimum distance requirement under both the federal and state constitutions.

Inspired by Bellevue's successful defense of its four-foot rule, the City of Federal Way promptly enacted a similar ordinance. The section at issue in this appeal provides:

> No employee or entertainer mingling with patrons shall conduct any dance, performance or exhibition in or about the non-stage area of the adult entertainment establishment unless that dance, performance or exhibition is performed at a torso-to-torso distance of no less than four feet from the patron or patrons for whom dance, performance or exhibition is performed.

The Federal Way ordinance immediately became the target of a suit filed in federal court by Déjà Vu-Everett-Federal Way, Inc., the only adult entertainment establishment in Federal Way. Federal District Court Judge Thomas Zilly granted Federal Way's motion for summary judgment dismissal in January 1996, giving collateral estoppel effect to the superior court decision on the Bellevue ordinance. As an additional basis for dismissing the claim, Judge Zilly ruled that the Federal Way ordinance is a valid "time, place, or manner" regulation under the federal constitution.

Judge Zilly refrained from ruling on Déjà Vu's claim that the ordinance violated the state constitution. He dismissed the state constitutional claim solely on the basis of collateral estoppel. Déjà Vu did not appeal Judge Zilly's ruling.

Meanwhile, the litigation on the Bellevue ordinance reached the Washington State Supreme Court. In May 1997, the Washington State Supreme Court affirmed the King County Superior Court's decision that the Bellevue four-foot rule was constitutional under both the state and federal constitutions. *Ino Ino, Inc., v. City of Bellevue*, 132 Wn.2d 103, 937 P.2d 154 (1997), *cert. denied*, 522 U.S. 1077 (1998).

In June 1997, Déjà Vu began the present action in King County Superior Court. This suit again sought relief from Federal Way's ordinance, this time solely on state constitutional grounds. Federal Way moved for summary judgment, asserting the preclusive effect of *Ino Ino* and Judge Zilly's decision. The superior court granted the motion and dismissed the suit. The court denied Federal Way's request for attorney fees for having to defend a frivolous action.

Déjà Vu appeals from the order of dismissal. Federal Way cross-appeals the denial of its motion for attorney fees.

## COLLATERAL ESTOPPEL

Federal Way contends that the collateral estoppel effect of the Supreme Court's decision in *Ino Ino* completely bars Déjà Vu, a plaintiff in that action, from relitigating the constitutionality of a four-foot limit. We agree.

■ The doctrine of collateral estoppel bars relitigation of an issue if (1) the issue presented is identical to the issue presented in a prior suit; (2) there was a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party, or in privity with a party, to the former litigation; and (4) no injustice will result from applying the doctrine. *Garcia v. Wilson*, 63 Wn. App. 516, 518, 820 P.2d 964 (1991). Déjà Vu claims to be pursuing a new cause of action expressly recognized in *Ino Ino*.

Déjà Vu contends a court can, under *Ino Ino*, declare a four-foot distance limit invalid under the state constitution if presented with evidence proving that the limit inevitably causes business failure.

In *Ino Ino* the court decided that enhanced protection under the state constitution is not warranted for challenges to time, place and manner restrictions in the context of sexually explicit dance. The appropriate analysis of such a claim is found in federal constitutional law. *Ino Ino*, 132 Wn.2d at 122. A four-foot rule is a time, place, or manner restriction, not a prior restraint, *Id.* at 127, and under federal constitutional law it is not unduly burdensome. "The provision furthers an important or substantial governmental interest because it facilitates the detection of public sexual contact and discourages contact from occurring in the first place." *Id.* at 128. After stating these basic principles, the *Ino Ino* court explained more specifically why the four-foot limit is not unduly restrictive. In a paragraph that is central to Déjà Vu's present appeal, the court rejected the arguments of the cabaret owners:

> However, Respondents argue that the four-foot rule is so restrictive as to deny dancers a reasonable means of earning a living and cause the imminent failure of all adult cabarets in Bellevue. If such a failure was inevitable, then the distance requirement would be unconstitutional. In *Gomillion v. Lightfoot*, 364 U.S. 339, 340-41, 81 S. Ct. 125, 5 L. Ed. 2d 110 (1960), the Supreme Court sustained a complaint which, if true, established that newly drawn municipal boundaries would have the "inevitable effect" of depriving a racial group of their constitutional right to vote. The stated purpose of the legislation in *Gomillion* was irrelevant because inevitably its provisions violated a constitutional right. *Id.*; *see also* [*United States v.* ]*O'Brien*, 391 U.S. [367,] at 385, [88 S. Ct. 1673, 20 L. Ed. 2d 672, *reh'g denied*, 393 U.S. 900 (1968)] (finding that the destruction of Selective Service certificates was not necessarily expressive, and thus a statute prohibiting this activity did not inevitably violate a constitutional right). In this case, Respondents presented evidence showing only that financial failure

was possible, and thus failed to show an "inevitable effect" such as that in *Gomillion.*

*Ino Ino, Inc. v. City of Bellevue,* 132 Wn.2d at 130-31.

Déjà Vu seizes upon the second sentence of the above paragraph from *Ino Ino*: "If [failure of adult cabarets] was inevitable, then the distance requirement would be unconstitutional." Déjà Vu isolates this sentence and insists it is a holding. According to Déjà Vu, it means that the four-foot rule, although upheld as constitutional in the facial challenge to the Bellevue ordinance, may still be challenged in successive suits with varying outcomes from jurisdiction to jurisdiction and from time to time depending on the actual impact of the restriction on the cabaret business in each community. Déjà Vu submits the declaration of its comptroller, Paul Bern, documenting dramatic decreases in revenue after the Federal Way club complied with the four-foot limit for 19 months. According to Déjà Vu, this "actual economic evidence" distinguishes its claim from the facial challenge to the Bellevue ordinance litigated in *Ino Ino*, and requires a trial to determine whether economic failure of adult cabarets is an "inevitable effect" of the ordinance in Federal Way.

The meaning of the sentence, "If such a failure was inevitable, then the distance requirement would be unconstitutional," was debated by another appellate panel in *DCR, Inc. v. Pierce County*, 92 Wn. App. 660, 964 P.2d 380 (1998). The *DCR* court considered the constitutionality of a 10-foot rule enacted by Pierce County. The dissent argued that the sentence is a holding by the Supreme Court, and that it mandates a fact-finding hearing to determine whether the distance limit will inevitably close the business. *Id.* at 690-91 (Armstrong, J. dissenting). The majority decided to regard the sentence as unsound dicta and refused to follow it, considering federal law to be "paramount." *Id.* at 680, 683.

We do not regard the sentence as a holding and, indeed, it is not even dicta. Read in context, it is simply the

Supreme Court's characterization of the *argument of the respondents*. After stating the respondents' argument, the Supreme Court went on to *reject* it. The Supreme Court did not intend to leave the door open for lower courts to strike down a dancer-to-patron distance limit whenever an adult cabaret is able to prove adverse economic effects. In the immediately preceding pages of the *Ino Ino* opinion, the Supreme Court had just finished aligning itself with federal jurisprudence that has consistently rejected economic impact arguments unless the challenged regulation intrinsically operates as an absolute bar to the market. Under the federal constitution, the scope of permissible economic analysis is whether the regulation permits entry or participation in the market for the expressive medium. *Colacurcio v. City of Kent*, 163 F.3d 545, 557 n.13 (9th Cir. 1998). The four-foot limit satisfies this test because it does not bar market entry and does not restrict the amount of payment erotic dancers may receive. *Ino Ino*, 132 Wn.2d at 131. With its decision in *Ino Ino*, the Supreme Court joined the federal courts in holding that a four-foot limit is constitutional even if it turns out that every adult cabaret has to close down for lack of business. The theory that *Ino Ino* created a new cause of action is spurious.

Déjà Vu was a plaintiff in *Ino Ino*. In its quest to have a court declare the distance limits to be violative of the Washington State Constitution, Déjà Vu has had a full trial on the merits and full appellate review. *Ino Ino* was a final judgment on the merits of that issue. No injustice will result from applying collateral estoppel against Déjà Vu. Accordingly, we hold the trial court erred in allowing Déjà Vu to renew the argument. *Ino Ino* is the last word on "time, place, or manner" analysis of the four-foot limit under the Washington State Constitution. Further discussion of that issue is precluded. The trial court should have dismissed Déjà Vu's suit on the basis of collateral estoppel.

## RES JUDICATA

Below, Federal Way alternatively argued that Judge Zil-

ly's unappealed dismissal of Déjà Vu's earlier challenge to Federal Way's four-foot rule is res judicata barring the present cause of action.

■■ The purpose of the doctrine of res judicata or claim preclusion is to avoid relitigation of a claim or cause of action. *Loveridge v. Fred Meyer, Inc.*, 72 Wn. App. 720, 724, 864 P.2d 417 (1993). In determining the preclusive effect of Judge Zilly's order dismissing Déjà Vu's first suit against Federal Way, this court applies federal law. *Id.* at 724-25. Déjà Vu is barred from presenting in the present action all grounds of recovery that could have been presented in its federal court action, whether they were or not, if the federal court action were a suit between the same parties on the same cause of action, and concluded in a final judgment on the merits. *International Union of Operating Eng'rs v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993)

■ Both of Déjà Vu's suits against Federal Way involved the same parties. To determine whether they involved the same cause of action, four criteria are considered: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1992). The fourth criteria is the most important. *Id.* at 1202.

Déjà Vu's present litigation arises out of the same nucleus of facts as its suit in federal court: it challenges the same ordinance. The evidence presented to each court was substantially the same. The two suits involve infringement of the same state constitutional right. Allowing Déjà Vu to proliferate successive challenges to Federal Way's ordinance with the possibility of varying outcomes will impair Federal Way's established right to enforce the ordinance.

■ Déjà Vu contends there was no final judgment on the

merits in federal district court because Judge Zilly did not address the constitutionality of the ordinance under the Washington State Constitution. Déjà Vu ignores Judge Zilly's ruling that all claims, including the state constitutional claims, were barred by the collateral estoppel effect of the King County Superior Court decision in *Ino Ino*. Any dismissal other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits. FED. R. CIV. P. 41(b). *See Dicken v. Ashcroft*, 972 F.2d 231, 235 n.5 (8th Cir. 1992) (summary judgment is a final judgment on the merits for purposes of res judicata).

In short, Judge Zilly's unappealed order of summary judgment dismissal operates as res judicata in the present suit. This is an additional reason why the superior court erred in conducting its own analysis of the four-foot rule. The court should have dismissed Déjà Vu's suit on the basis of res judicata.

■ In reviewing an order of summary judgment, this court may affirm the order on any theory within the pleadings and the proof. *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027, *cert. denied*, 493 U.S. 814 (1989). Although the trial court unnecessarily engaged in a substantive analysis of Déjà Vu's "inevitable effects" theory, it reached the same result as if it had applied collateral estoppel and res judicata. We affirm the judgment of dismissal.

## ATTORNEY FEES

■ The trial court denied Federal Way's motion for attorney fees under RCW 4.84.185 and CR 11. Federal Way cross-appeals, claiming the court abused its discretion because Déjà Vu's claim is frivolous. We grant the City's cross-appeal.

■ A trial court's decision to grant or deny attorney fees will not be disturbed in the absence of an abuse of discretion. Discretion may be abused, however, if based on unten-

able grounds. *Layne v. Hyde*, 54 Wn. App. 125, 135, 773 P.2d 83 (1989). The court below rejected the City's request for attorney fees after deciding that Déjà Vu's "inevitable effects" claim was at least arguable under the state constitution. This was not a tenable basis for the ruling. *Ino Ino* and Judge Zilly's decision both precluded such argument.

Considering the entire record and resolving all doubts in favor of Déjà Vu, we find the present action is not supported by any rational argument based on the law or the facts. *See id*. at 135. It is frivolous to argue that our Supreme Court intended to breathe life into further challenges. Relitigation of the four-foot rule is a waste of time. We remand for an award of attorney fees in favor of Federal Way for having to defend this suit below and on appeal.

The judgment of dismissal is affirmed. The order denying Federal Way's request for attorney fees is reversed.

KENNEDY, C.J., and BAKER, J., concur.

Reconsideration denied August 2, 1999.

Review denied at 139 Wn.2d 1027 (2000).