54 P.3d 687 (2002)
113 Wash.App. 401
Jerry L. HISLE, Michael D. Nicholas, Dale A. Riccetti, Jerry Roth, Ron L. Shoup, individually, and on behalf of the class they represent, Appellants,
v.
TODD PACIFIC SHIPYARDS CORPORATION, a Delaware corporation, Respondent.
No. 48478-8-I.
Court of Appeals of Washington, Division 1.
September 16, 2002.
*690 Bruce E. Heller, Seattle, WA, for Appellant.
Richard J. Omata, Jennifer A. Burkhardt, Seattle, WA, for Respondent. *688
*689 KENNEDY, J.
The 1997 collective bargaining agreement between Todd Shipyards and Puget Sound Metal Trades Council provided for a one-time retroactive contract ratification incentive payment to certain unionized employees at Todd, in the amount of $0.60 per attendance hour during the period covered by the retroactive payment. Jerry Hisle, Michael Nicholas, Dale Riccetti, Jerry Roth and Ron Shoup (hereinafter the "named appellants") are union members who were entitled to receive the retroactive payment. They and 877 other like-situated employees worked overtime hours during the period covered by the retroactive payment. Todd made the payment when it fell due, but did not pay time and one-half for the overtime hours. The named appellants brought this action, seeking class action certification and a declaratory judgment that they and the other like-situated employees were entitled to time and one-half for their overtime hours during the period covered by the retroactive payment, under Washington's Minimum Wage Act. The trial court denied the named appellants' request for summary judgment and class certification, and granted summary judgment to Todd, dismissing the lawsuit on grounds of res judicata, contract bar, estoppel, federal preemption and the statute of limitations. We reverse the trial court's rulings. This lawsuit is not barred by any of the doctrines upon which Todd relies. Moreover, because the payment was conditioned on the number of hours worked by the employees during the retroactive period, it became part of the regular rate at which they were employed during that period and Todd owes retroactive overtime pay for the covered period. We remand for entry of summary judgment in favor of the named appellants on the overtime pay issue, reconsideration of the motion for class certification in light of our rejection of Todd's defenses, and for a trial on damages and attorney fees. We also award the named appellants their reasonable attorney fees for this appeal.

FACTS
The named appellants in this lawsuit, for which they seek class action certification, are members of various unionized crafts who work at Todd Shipyards. Historically, the Puget Sound Metal Trades Council (PSMTC, or the union) has represented Todd's unionized employees in collective bargaining with the company. In 1994, Todd bid on a contract with the State of Washington to build state ferries. At the time of the bid, a collective bargaining agreement (CBA) was in effect spanning 1993-1996. So that Todd could submit a competitive bid for the state ferry contract, Todd and PSMTC negotiated a separate labor contract, known as the Ferry Project Agreement (FPA), with lower wages and more flexible working conditions, solely for employees who would be working on the ferries. The FPA was executed on December 29, 1994, and was to continue until March 31, 2000. Thus, the CBA and the FPA overlapped. The FPA contained a provision that "[i]f the Parties cannot reach agreement for successor labor agreements, their differences shall be resolved by interest arbitration, using the procedures set forth for a single arbitrator in the current labor agreement, and in successor agreements." Clerk's Papers at 26. Except as otherwise specified in the FPA, the terms and conditions of the 1993 CBA continued to apply to all of Todd's unionized employees.
Negotiations for a successor CBA commenced in February 1996. Todd and PSMTC reached a tentative agreement in June 1996, but when it was submitted to the union membership for a ratification vote it was rejected. After months of additional negotiation, Todd and PSMTC reached a new *691 tentative agreement in March 1997. But the membership rejected this proposal, as well. Todd and PSMTC reached their next proposed agreement in May 1997. This proposal provided for a wage and fringe benefit increase, effective upon ratification, of $0.60 per hour, and also provided that an additional, one-time retroactive payment of $0.60
for each non-Washington State Ferry Project attendance hour from August 1, 1996 until the execution date of the contract (less applicable employee deductions) shall be made to all non-Washington State Ferry Project employees that were actively employed on the execution date of the contract or had seniority rights as of the execution date of the contract.
Clerk's Papers at 64. The parties agreed that "attendance hours" meant "actual hours worked in the shipyard." Id. at 264.
It is undisputed that the one-time retroactive payment was intended to serve as a contract ratification inducement. Nevertheless, when this proposal was submitted to the union membership for ratification, they turned it down. Todd and PSMTC agreed that they had reached an impasse, and that they were required by the arbitration clause in the FPA to submit their differences to be resolved by interest arbitration.
After some initial skirmishes, during which PSMTC indicated its intention to submit new proposals to the arbitrator, and Todd indicated its intention to submit the last proposal but without the ratification inducement, the company and the union agreed to jointly submit the May 1997 proposal that the membership had rejected. On November 17, 1997, the arbitrator issued the following award:
B. The authorized representatives of the parties have reached a reasonable bargain and no issues have been left unresolved; and
C. The Interest Arbitrator must adopt the proposed successor [CBA] agreed to by the parties.
Clerk's Papers at 104.
Todd paid the ratification inducement on December 10, 1997. Todd did not pay time and one-half to those employees who had worked overtime hours during the retroactive period, but instead paid for overtime hours at the same $0.60 rate as regular hours. This did not pass unnoticed by the membership, some of whom sought an opinion from a labor law attorney as to whether they were entitled to overtime pay as part of the retroactive payment. The attorney they consulted opined that they were not so entitled.
On February 17, 1998, some 200 unionized Todd employees, including the five named appellants in the instant matter, filed suit in federal court under the caption Adams et al. v. Puget Sound Metal Trades Council, AFL-CIO, and Todd Pacific Shipyards Corporation (Adams) seeking a declaratory judgment that PSMTC had breached its duty of fair representation and exceeded its authority by executing the 1997 CBA after it was rejected by the membership, that Todd knew or should have known that PSMTC exceeded its authority in executing the agreement, that the 1997 CBA was null and void because it had been rejected by the union membership, and that the arbitrator exceeded his powers by issuing the award. Todd filed a counterclaim, contending that if the court vacated the arbitrator's award and nullified the CBA, the plaintiffs should be required to disgorge the increase in wages and fringe benefits they had been paid under the CBA, including the ratification inducement.
The plaintiffs and the union subsequently settled the Adams lawsuit. By the terms of the settlement agreement, PSMTC promised never again to execute a collective bargaining agreement with Todd Shipyards that had not been ratified by bargaining unit members, the plaintiffs agreed to the dismissal of all of their claims in the action, and the plaintiffs and union mutually agreed to "release each other from any and all claims, demands, liabilities, and causes of action of every kind stemming from or in any way related to the claims raised in this Action." Clerk's Papers at 141. Todd had been joined in the lawsuit as a necessary party because it was a party to the CBA. Todd was not a party to the settlement agreement, but agreed to the dismissal of all claims and counterclaims by *692 approving entry of an order of dismissal dated June 2, 1999.
The five named appellants subsequently brought the lawsuit that is the subject of this appeal, claiming that, under Ch. 49.46 RCW, Washington's Minimum Wage Act (MWA), they and 877 unionized workers at Todd Shipyards had been underpaid for overtime hours included in the one-time retroactive payment provision of the 1997 CBA.
Both the named appellants and Todd moved for summary judgment, and the named appellants moved for class certification. The trial court granted summary judgment to Todd, denied the motion for class certification, and dismissed the lawsuit. This appeal followed.

DISCUSSION

I
Todd suggests, and we agree, that it is logical for us to first address its defenses to the lawsuit, since it is only if the trial court erred in ruling that the named appellants' claims are barred by the doctrine of res judicata, contract bar, estoppel, the statute of limitations, and preemption that we need reach the named appellants' claims that the trial court should have granted them summary judgment, certified the class, and proceeded to trial on the issues of damages and attorney fees.
1. Res Judicata
The purpose of the doctrine of res judicata is to avoid relitigation of claims or causes of action arising out of the same transactional nucleus of facts, Deja Vu-Everett-Federal Way, Inc. v. City of Federal Way, 96 Wash.App. 255, 262, 979 P.2d 464 (1999); Costantini v. Trans World Airlines, 681 F.2d 1199, 1201 (9th Cir.1982), so as to avoid repetitive litigation, conserve judicial resources, and prevent the moral force of court judgments from being undermined. International Union of Operating Eng'rs v. Karr, 994 F.2d 1426, 1430 (9th Cir.1993).
Res judicata bars all grounds for recovery that could have been asserted, whether they were or not, in a prior action between the same parties if there is a concurrence of identity in (1) the subject matter; (2) the cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made. Deja Vu, 96 Wash.App. at 262, 979 P.2d 464; Karr, 994 F.2d at 1429; Rains v. State, 100 Wash.2d 660, 665, 674 P.2d 165 (1983). If any single requirement is lacking, the doctrine does not apply, International Bhd. of Pulp, Sulphite & Paper Mill Workers v. Delaney, 73 Wash.2d 956, 960, 442 P.2d 250 (1968), and the party invoking the defense has the burden of proving its applicability. McDaniels v. Carlson, 108 Wash.2d 299, 304, 738 P.2d 254 (1987).
Todd contends that the subject matter of both the Adams suit and the present suit is the same, namely, the validity of the 1997 CBA. We disagree. The subject matter of the Adams lawsuit was, indeed, the validity of that agreement, given the fact that the union executed the agreement and presented it to the arbitrator as representing the position of the membership, even though the membership had rejected it. The subject matter of the present lawsuit, however, is the applicability of Washington's MWA to the overtime hours included in the retroactive one-time payment provision contained in that now admittedly valid agreement.
But Todd argues that the validity of the agreement really is at issue in this lawsuit because the agreement does not provide for overtime pay at the statutory rate of time and one-half to be included in the retroactive payment, and to rule that the MWA applies to the agreement would be the same as saying the agreement is invalid. In support of this conclusion, Todd points to unrefuted evidence in the record that, when the ratification inducement was negotiated, it was intended by both sides to the negotiation that overtime hours would be paid at the same rate as regular hours because the payment was intended as a ratification inducement that happened to be measured by hours worked and not as retroactive additional compensation for hours worked. Todd argues that when the named appellants agreed to the settlement in Adams, they agreed that the 1977 CBA was valid, thereby agreeing to *693 be bound by its terms as those terms had been understood and agreed by both sides to the negotiation.
We still disagree. As we shall demonstrate later in this opinion, the fact that Todd and the union agreed that the overtime provisions of Washington's MWA would not apply to the retroactive payment is immaterial; the question is purely one of a nonnegotiable statutory right. The applicability of the overtime provisions of the MWA turns on the character of the retroactive payments, and that, too, is a matter governed by law and not by any intention of the negotiators that might have been contrary to law. A judicial declaration that the overtime pay provisions of the MWA apply as a matter of law to the overtime hours included in the one-time retroactive payments is not a declaration that the CBA is invalid; it's merely a declaration that the statutory provisions apply to the payments, even if the negotiators had not understood that to be so.[1]
Thus, the subject matter of Adams and the instant lawsuit are not the same. Nor are the causes of action. In considering whether causes of action are the same for purposes of res judicata, courts consider (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. Hayes v. City of Seattle, 131 Wash.2d 706, 713, 934 P.2d 1179, 943 P.2d 265 (1997); Costantini, 681 F.2d at 1201-02 (9th Cir. 1982). Todd asserted a counterclaim in Adams, contending that it would be inequitable for the plaintiffs in that action to be allowed to challenge the validity of the CBA since they had already been paid increased wages, fringe benefits, and the ratification inducement, and so they ought to be required to disgorge the payments if the CBA was declared to be null and void. Todd now asserts that it would be strongly prejudiced if the named appellants were allowed to proceed with the instant lawsuit because Todd agreed to the dismissal of its counterclaim in Adams in reliance upon the settlement agreement in that case whereby the plaintiffs and the union mutually released one another from "any and all claims, demands, liabilities, and causes of action of every kind stemming from or in any way related to the claims raised in [Adams]."
But the claims now asserted by the named appellants do not stem from, nor are they in any way related to, the claims or counterclaims raised in Adams. In Adams, the plaintiffs challenged their bargaining agent's authority to execute a labor agreement that had been rejected by the union members, and sought a declaratory judgment that the CBA was null and void. Todd challenged the plaintiffs' right to retain the ratification inducement monies that had been paid to them if the CBA were to be declared null and void. By settling Adams, the plaintiffs agreed to live with the CBA in exchange for the union's promise never again to execute an agreement that the union membership had rejected, and all parties agreed to the entry of an order of dismissal of all claims and counterclaims asserted in the case. The present action assumes the validity of the CBA, and asks the court to determine whether the MWA applies to the retroactive payments as a matter of law. This is not an issue that flows naturally from any of the issues raised in Adams. Todd's counterclaim had nothing to do with *694 the question of whether overtime hours included in the retroactive payment should have been paid at overtime rates, but rather, whether the plaintiffs ought to be required to disgorge the retroactive payments, as well as the increased wages and fringe benefits that had already been paid under the contract. The transactional nucleus of facts in Adams was the union's execution of the CBA despite the membership's rejection, and the plaintiffs' retention of increased wages, fringe benefits, and the ratification incentive paid under the contract, while challenging the validity of the CBA. The transactional nucleus of facts in this case is Todd's failure to pay overtime rates for overtime hours included in the retroactive payment. None of the evidence in Adams is relevant to the issues raised by the named appellants in this case; that evidence is relevant only to Todd's defenses. Were it not for the defenses, this case could be disposed of entirely on the basis of the unambiguous language in the CBA regarding the computation of the amount of the retroactive payments, Todd's failure to pay overtime rates for overtime hours worked during the retroactive period, and the application of Washington's MWA to the ratification incentive.
In Adams, Todd achieved the withdrawal of the plaintiffs' challenges to the validity of the CBA. The plaintiffs did not, by reason of the settlement agreement and dismissal of their claims in Adams, give up such nonnegotiable substantive rights as are contained in the MWA; such rights prevail regardless of any agreement to the contrary. United Food & Commercial Workers Union Local 1001 v. Mutual Benefit Life Ins. Co., 84 Wash.App. 47, 51-52, 925 P.2d 212 (1996), abrogated on other grounds by Seattle Professional Eng'g Employees Ass'n, 139 Wash.2d 824, 834, 991 P.2d 1126, 1 P.3d 578 (2000); Miller v. AT & T Network Systems, 850 F.2d 543, 546 (9th Cir.1988). Accordingly, none of Todd's rights or interests established in the prior judgment will be lost or impaired by prosecution of the present action.
Having rejected Todd's contention that this case and Adams have a concurrence of identity in subject matter and cause of action, we do not need to address persons and parties. See Delaney, 73 Wash.2d at 960, 442 P.2d 250 (if any single requirement of res judicata is missing, the doctrine does not apply). In sum, the trial court erred by dismissing this lawsuit on grounds of res judicata.
2. Contract Bar
Todd also contends, separately from its res judicata defense, that the named appellants are barred by contract from bringing the instant lawsuit because they and the other plaintiffs in Adams released "all claims, demands, liabilities, and causes of action of every kind stemming from or in any way related to the claims raised in [Adams]." See Riley Pleas, Inc. v. State, 88 Wash.2d 933, 938, 568 P.2d 780 (1977) (a compromise or settlement agreement is a contract; its construction is governed by legal principles applicable to contracts). Although Todd was not a party to the settlement agreement, it claims to be a third-party beneficiary of the agreement and that it released its counterclaim in reliance on the release contained in the settlement agreement. Because we have already rejected the contention that the claims raised in the instant lawsuit are in any way related to the claims raised in Adams, we do not need to determine whether Todd was a third party beneficiary of the settlement agreement. To the extent that it was, the contract bar defense fails for the same reason that the res judicata defense fails. By settling Adams, the named appellants did not negotiate away their nonnegotiable statutory rights under the MWA.
The dismissal of all claims and counterclaims in Adams returned the parties to the status quo ante. That is to say, the plaintiffs in Adams accepted the legitimacy of the CBA, thereby mooting Todd's claim that they ought to be required to disgorge the benefits they derived from the CBA if the CBA were to be declared null and void. The plaintiffs in Adams never contended that the CBA was invalid because it failed to provide for time and one-half for overtime pay included in the retroactive payments, and the named appellants make no such claim in the current *695 lawsuit. Neither do the named appellants refute evidence presented by Todd that both Todd and the union did not intend for the retroactive payments to include overtime pay for overtime hours. They simply argue, and properly so, that such intent is immaterial because their statutory rights are substantive and nonnegotiable, a legal proposition that is entirely unrelated to any claims or counterclaims in Adams.
3. Estoppel
Todd also contends that the named appellants are precluded from bringing the current lawsuit on grounds of judicial and equitable estoppel. Judicial estoppel "prevents a party from taking a factual position that is inconsistent with his or her factual position in previous litigation." Miles v. State, 102 Wash.App. 142, 153 n. 21, 6 P.3d 112 (2000), review denied, 142 Wash.2d 1021, 16 P.3d 1266 (2001) (citations omitted). Equitable estoppel requires (1) that a party sought to be estopped has made an admission or statement or acted in such a manner as is inconsistent with his or her later claim; (2) that the other party reasonably relied upon such admission, statement or act; and (3) that the other party would suffer injury if the party to be estopped were allowed to contradict his or her earlier admission, statement or act. PUD 1 v. Walbrook Ins. Co., Ltd., 115 Wash.2d 339, 347, 797 P.2d 504 (1990).
These arguments are based upon Todd's same misapprehensions already discussed, that by asserting their statutory rights under the WMA, the named appellants are once again attempting to invalidate the 1997 CBA, inconsistently with their settlement agreement in Adams. We reject these arguments for the same reasons as already discussed in this opinion.
4. Statute of Limitations
Todd's statute of limitations defense is based upon its contention that the named appellants' sole remedy for their claim under the MWA was to file a motion in federal court to vacate the arbitrator's award, a remedy that they sought on other grounds and later abandoned in settling Adams. Such a motion must be brought within three months of the entry of the award. 9 U.S.C. § 12.[2] We reject this contention. The arbitrator's award approved and adopted the 1997 CBA, but the arbitrator was never asked to decide whether the MWA applied to overtime hours included in the retroactive payments, and made no decision in that regard. Accordingly, the award need not be set aside for the issue to be raised in this lawsuit. This action seeks recovery under the MWA, and is, therefore, subject to the three-year statute of limitations provided under RCW 4.16.080(3). Seattle Professional Engineering, 139 Wash.2d at 837, 991 P.2d 1126 (overruling Cannon v. Miller, 22 Wash.2d 227, 155 P.2d 500 (1945), which had held that such claims are subject to the two-year statute of limitations). Todd paid the ratification incentive on December 10, 1997. This action was filed two years later, on December 10, 1999. It was brought well within the only applicable statute of limitations.
5. Preemption
Federal labor law, developed under § 301 of the Labor Management Relations Act of 1947, generally requires employees to seek redress for grievances through arbitration when there is an applicable collective bargaining agreement providing for such dispute resolution. The 1997 CBA contains such a provision. Under § 301, it is the arbitrator in the grievance process, not the court, who has the responsibility to interpret the meaning and scope of a labor contract in the first instance. Only those claims founded directly on rights created by a collective bargaining agreement and those substantially dependent on analysis of a collective agreement are governed by § 301, however. United Food & Commercial Workers, 84 Wash.App. at 50-51, 925 P.2d 212, citing Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213-16, 105 S.Ct. 1904, 85 *696 L.Ed.2d 206 (1985). See also Featsent v. City of Youngstown, 70 F.3d 900, 906 (6th Cir.1995) (police officers suing city for failure to comply with federal Fair Labor Standards Act in calculating their overtime pay were not required to invoke grievance and arbitration procedures of collective bargaining agreement; plaintiffs disputed neither the meaning of the agreement nor its scope, alleging instead violations of FLSA); Schneider v. Snyder's Foods, Inc., 95 Wash.App. 399, 402-04, 976 P.2d 134 (1999) (route drivers who were classified under collective bargaining agreement as exempt outside salesmen brought class action lawsuit for unpaid overtime compensation alleged to be required under MWA; trial court dismissed on grounds of federal preemption and failure to exhaust administrative remedies; held, drivers could not be forced to arbitrate nonnegotiable substantive rights granted under MWA; reversed and remanded to determine whether drivers were exempt under state law defining outside salesmen).
Todd contends that it is necessary to interpret the 1997 CBA in order to determine whether the MWA applies to the overtime hours included in the retroactive payments. Representatives of both Todd and the union have signed declarations stating that it was expressly agreed during negotiation of the 1997 CBA that no overtime would be paid on the ratification inducement because the payment was intended not as compensation for work performed but as a ratification inducement that would be separate from, and above and beyond wages. The trial court believed this to be the crux of the preemption issue:
[Q]: THE COURT: I read the materials carefully. What struck me first was Plaintiffs' argument that this is a retroactive pay increase, and the analysis that flows from that seems to beg the question. Isn't the real question here, at least the initial question here: What is the characterization of this lump sum payment, and who should determine that? Plaintiffs' written submissions presume that it is a retroactive pay increase. And then the analysis flows from that. But the real question, as I view it is, what is this payment and who should make that determination? Because I don't think that Todd is going to say that no, the Fair Labor Standards Act doesn't apply to a retroactive pay increase. I think they would concede that it does. So the real question is the characterization and who makes that determination.
Report of Proceedings at 21-22.
The trial court asked the appropriate question, but misunderstood that the answer is not dependent upon the intent of Todd and the union when they negotiated the CBA, and so the question is not one for an arbitrator in the first instance. As the United States Supreme Court pointed out in Lueck, 471 U.S. at 212, 105 S.Ct. 1904, "[c]learly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law." Following up on this statement, the high court emphasized in Livadas v. Bradshaw, 512 U.S. 107, 123-24, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994), that
§ 301 cannot be read broadly to preempt nonnegotiable rights conferred on individual employees as a matter of state law, and we stressed [in Lueck] that it is the legal character of a claim, as "independent" of rights under the collective-bargaining agreement (and not whether a grievance arising from "precisely the same set of facts" could be pursued) that decides whether a state cause of action may go forward.
(Footnotes and citations omitted).
Moreover, state courts are not preempted from interpreting the terms of collective-bargaining agreements in resolving non-preempted claims, although they must apply federal common law in doing so. Livadas, 512 U.S. at 124 n. 18, 114 S.Ct. 2068, citing Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962); N.L.R.B. v. C & C. Plywood Corp., 385 U.S. 421, 87 S.Ct. 559, 17 L.Ed.2d 486 (1967). In addition, "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished[.]" Livadas, 512 U.S. at 124, 114 S.Ct. 2068, citing Lingle, 486 U.S. at 413 n. 12, 108 S.Ct. 1877 ("A *697 collective-bargaining agreement may, of course, contain information such as rate of pay ... that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled").
The claims raised in the instant lawsuit are based on substantive, nonnegotiable rights contained in the MWA:
Washington's wage and hour statutes establish the "minimum standard for wages and working conditions of all employees" in the state. RCW 49.46.120. Under that statutory scheme, an employee has a right to be paid either his or her regular wage or, when appropriate, overtime for all time worked. See RCW 49.46.020 (establishing minimum wage); RCW 49.46.130(1) (employers must pay one and one-half times regular rate when employee works over 40 hours per week); RCW 49.48.010 (employer cannot withhold or divert any part of employee's wages unless specifically authorized to do so); RCW 49.52.050 (misdemeanor when employer, with intent to deprive, willfully pays employee lower wage than mandated by statute or contract); WAC 296-128-550 (regular rate is hourly rate at which employee is paid); RCW 49.46.090(1) (employer who pays employee less than wages entitled to shall be liable to employee for full amount of wage rate, costs, and attorney fees). An employer has a corresponding duty to maintain accurate records of each employee's hours worked, rate of compensation, and amount paid. RCW 49.46.070. In enacting these protections, the Legislature stated that parties, bargaining collectively, may establish wages or other work conditions only "in excess of the applicable minimum" set forth in these provisions. RCW 49.46.110. See also RCW 49.46.090(1) (private agreement to less than minimum standard is no defense to action under statute).
United Food & Commercial Workers Union, 84 Wash.App. at 51-52, 925 P.2d 212. Our Supreme Court reached the same result, more succinctly, in Seattle Professional Engineering, 139 Wash.2d at 839 n. 9, 991 P.2d 1126, when it said: "Because our decision rests exclusively on the WMWA, we do not reach Boeing's contentions that the union-represented employees' claims are subject to federal preemption under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 or a requirement of exhaustion of collective bargaining agreement remedies." (Citations omitted).
In sum, the trial court erred by dismissing the named appellants' lawsuit on grounds of § 301 preemption.
We reverse the trial court's grant of summary judgment to Todd, and reinstate the lawsuit.

II
The named appellants also assign error, pointing to the trial court's failure to grant their motion for summary judgment and the denial of their motion for class certification. Accordingly, we now turn to those issues.
1. Appellants' Summary Judgment Motion and the Character of the Ratification Inducement
Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is "one upon which the outcome of the litigation depends[.]" Barrie v. Hosts of America, Inc., 94 Wash.2d 640, 642, 618 P.2d 96 (1980). It is undisputed that Todd and the union intended to formulate a ratification inducement, and not a retroactive pay increase as such. The question is whether, by tying the payment to actual hours worked at the shipyard during the retroactive payment period, they brought the payments under the overtime pay requirements of the MWA, regardless of intent to the contrary. We conclude that they did. The 1997 CBA reads in relevant part as follows:
*698 WAGE AND FRINGE INCREASE

Effective upon Ratification $.60/hour Wage/Fringe
Effective 8-1-98 $.61/hour Wage/Fringe
Effective 7-31-99 Collective Bargaining Agreement terminates

 Retroactive payments of $.60 for each non-Washington State Ferry Project attendance
 hour from August 1, 1996 until the execution date of the contract (less applicable employee
 deductions) shall be made to all non-Washington State Ferry Project employees that were
 actively employed on the execution date of the contract or had seniority rights as of the
 execution date of the contract.
Clerk's Papers at 64. As earlier mentioned, the parties have agreed that "attendance hours" are the "actual hours worked in the shipyard." Clerk's Papers at 264.
RCW 49.46.130 provides that "no employer shall employ any of his employees for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less specified at a rate not less than one and one-half times the regular rate at which he is employed." WAC 296-128-550 defines "regular rate" to mean "the hourly rate at which the employee is being paid[.]"
The MWA is based upon the federal Fair Labor Standards Act of 1938 (FLSA). Inniss v. Tandy Corp., 141 Wash.2d 517, 523, 7 P.3d 807 (2000). When construing provisions of the MWA, courts may consider interpretations of comparable provisions of the FSLA as persuasive authority. Id. at 524, 7 P.3d 807.
Like the MWA, the FSLA requires employers to pay their employees at a rate of one and one-half times the "regular rate" at which they are employed, for workweeks longer than 40 hours. 29 U.S.C. § 207(a)(1). Unlike the MWA, under which "regular rate" simply means "the hourly rate at which the employee is being paid," the FSLA defines "regular rate" to include "all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include" eight categories of remuneration, some containing restrictive qualifying subsections. 29 U.S.C. § 207(e). We will not discuss the exempted forms of remuneration in great detail, but by way of summary they include: (1) sums paid as gifts, for example at Christmas, that are not measured by or dependent upon hours worked; (2) sums paid for occasional vacation, holiday or sick leave days when no work is actually performed, and reasonable payments to reimburse for travel expenses the employee has incurred in pursuit of the employer's business that are not made as compensation for employment; (3) bonuses paid in recognition of services performed during a given period in the sole discretion of the employer and not pursuant to any prior contract, agreement or promise causing the employee to expect such payments on a regular basis, or sums paid to bona fide profit-sharing, thrift or savings plans so long as the payments are determined without regard to hours of work, production or efficiency; (4) contributions irrevocably made by the employer to a trustee or third person pursuant to a bona fide retirement, life, accident or health insurance plan; (5) extra compensation for overtime hours at a premium rate higher than time and one-half; (6) extra compensation for work performed on Saturdays, Sundays, holidays and the like, at a rate that is not less than time and one-half for like work performed on regular working days; (7) extra compensation at a premium rate that has been bargained for in an applicable employment contract or collective bargaining agreement for overtime hours, so long as the premium rate is not less than time and one-half for work performed during normal working hours; (8) value or income derived from employer-provided grants, stock options, or bona fide employee stock purchase programs that meet specific requirements spelled out in the statute. 29 U.S.C. § 207(e) §§ (1) (8).
We observe that remuneration as an incentive for unionized employees to approve a collective bargaining agreement is not included in the list of eight categories of exceptions to "regular rate" under § 207(e). Nevertheless, in Minizza v. Stone Container Corp. *699 Corrugated Container Div. East Plant, 842 F.2d 1456 (3d Cir.1988) the court ruled that a ratification incentive that was not conditioned on the number of hours worked could properly be excluded from regular pay under the exception in 29 U.S.C. § 207(e)(2), which reads in its entirety as follows:
(2) payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment[.]
(Emphasis added). After rejecting the argument that the phrase "other similar payments" in the highlighted language must be limited to other payments similar to vacation pay and sick leave pay, or similar to expenses properly reimbursable by the employer, the court concluded that the lump sum ratification incentive there at issue was excludable because it was not calculated based on the number of hours worked; accordingly it was "similar to" payments to an employee that are not made as compensation for his hours of employment. Instead, the contract provided for a lump sum payment of $750 on July 1, the starting date of the first year of the agreement, to all employees who had been actively employed for a period of three months before that date, and a second lump sum payment of $500 on July 1 of the second year of the agreement to all employees who had been actively employed for six months prior to that payment date, regardless of the number of hours that the employees had worked during the qualifying periods. Minizza, 842 F.2d at 1458; 1461-62. The court specifically declined to hold that all contract ratification incentive payments are excludable from the regular rate; instead, excludability depends on the facts of each particular case. Id. at 1463. The dissenting judge disagreed with the majority's construction of the statute. He pointed out that the ratification incentive at issue had been bargained for in lieu of a wage increase, and would have treated the ratification incentive payments as non-excludable bonusesnon-excludable because they were not totally discretionary on the part of the employer as provided under 29 U.S.C. § 207(e)(3), but rather were required by the contract itself. See 29 C.F.R. § 778.211 (any bonus "which is the result of collective bargaining would not be excluded from the regular rate under [§ 207(e)(3)]"). Id. at 1466 (Sloviter, J., dissenting).
We find the opinion of the Minizza majority persuasive, but only insofar as it applies to contract ratification incentive payments that are not calculated based on hours of employment. As the Minizza majority pointed out, the FSLA should not be used to impede "creative and innovative collective bargaining which brings labor peace." 842 F.2d at 1463 (footnote omitted). The MWA permits "employees to bargain collectively with their employers through representatives of their own choosing in order to establish wages or other conditions of work in excess of the applicable minimum" under the act. RCW 49.46.110 (emphasis added). But the minimum standards contained in the MWA remain non-negotiable, and unlike the FSLA, the MWA contains no exclusion comparable to that read into 29 U.S.C. § 207(e)(2) by the Minizza majority. Thus, we are inclined to a narrow reading of Minizza, in terms of its persuasive value as to the meaning of "regular rate" under the MWA.
We also find persuasive value in the warning of the dissenting judge in Minizza: "Congress [could not have] envisioned that the bargaining parties could agree to substitute non-discretionary, collectively bargained bonuses in lieu of wages and thereby decrease the amount of overtime that must be paid to workers." 842 F.2d at 1466 (Sloviter, J., dissenting). Thus, strong policy considerations favor treating contract ratification incentives that are tied to the number of hours worked as compensation for hours worked. This is especially true in Washington, which has a "long and proud history of being a pioneer in the protection of employee rights." Drinkwitz v. Alliant Techsystems, Inc., 140 Wash.2d 291, 300, 996 P.2d 582 (2000). We hold that the MWA requires that contract ratification incentive payments *700 that are conditioned upon the number of hours worked must be treated as part of an employee's regular pay, regardless of any contrary intent of the parties to the collective bargaining process, for purposes of calculating overtime pay for the period covered by the retroactive payment. That being so, 29 C.F.R. § 778.303 is directly in point and highly persuasive with respect to the treatment of the ratification incentive in this case, which is tied directly to the number of hours actually worked by non-Washington State Ferry Project employees that were actively employed or had seniority rights as of the execution date of the contract:
Where a retroactive pay increase is awarded to employees as a result of collective bargaining, or otherwise, it operates to increase the regular rate of pay of the employees for the period of its retroactivity. Thus, if an employee is awarded a retroactive increase of 10 cents per hour, he is owed, under the Act, a retroactive increase of 15 cents for each overtime hour he has worked during the period, no matter what the agreement of the parties may be. A retroactive pay increase in the form of a lump sum for a particular period must be prorated back over the hours of the period to which it is allocable to determine the resultant increases in the regular rate, in precisely the same manner as a lump sum bonus. For a discussion of the method of allocating bonuses based on employment in a prior period to the workweeks covered by the bonus payment, see § 778.209.[[3]]
29 C.F.R. § 778.303 (emphasis added).
In sum, the trial court erred by granting summary judgment to Todd, and by failing to grant summary judgment to the named appellants. Accordingly, we reverse the order denying the named appellants' motion for summary judgment and remand for entry of summary judgment in their favor, and a trial on damages and attorney fees.
2. Certification of the Class
A trial court's decision regarding whether to certify a class is a discretionary one that will not be overturned unless it is manifestly unreasonable or based on untenable grounds. Lacey Nursing Ctr., Inc. v. Department of Revenue, 128 Wash.2d 40, 47, 905 P.2d 338 (1995). The trial court's denial of the named appellants' motion to certify the class was based entirely on Todd's defenses of res judicata, contract bar, estoppel, statute of limitations, and preemption. Because the trial court believed that the named appellants, all of whom were parties to the Adams lawsuit, were subject to all of those defenses, the court also believed that the named appellants could not meet the requirements of typicality, adequacy of representation and commonality. See, e.g., Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir.1992) (denying class certification because unique defenses could be raised against named plaintiff); Rainy Lake One Stop., Inc. v. Marigold Foods, Inc., 195 F.3d 430, 437 (8th Cir.1999) (class certification denied because a proposed class representative is not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation); General Tel. Co. v. Falcon, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (where named plaintiffs must address unique defenses, such arguments raise genuine issues of law and fact that are not common to the class as a whole and defeat a finding of commonality). But we have rejected all of Todd's defenses and thus the trial court's denial of the motion for class certification was based upon a misapplication of the law relating to these defenses, which is an untenable ground and an abuse of discretion. City of Bellingham v. Chin, 98 Wash.App. 60, 66, 988 P.2d 479 (1999) (a *701 ruling based on an erroneous reading of the law is per se an abuse of discretion), review denied, 140 Wash.2d 1026, 10 P.3d 405 (2000). Accordingly, we reverse the trial court's ruling denying class certification.
The named appellants argue persuasively that they have satisfied all of the requirements for class certification under CR 23, and Todd offers no arguments to the contrary that are not based entirely on its now-rejected defenses. Still, the trial court never reached the merits of the motion because it denied the motion based entirely on Todd's defenses. Accordingly, we remand the motion for class certification back to the trial court for reconsideration on the merits, in light of our ruling rejecting Todd's defenses.
Those employees who were entitled to receive the retroactive payment and who worked overtime hours during the period of retroactivity are entitled to overtime pay at time and one-half after the retroactive payment is prorated over the hours of the retroactive period and included in their regular pay. Accordingly, the trial court should make its determination regarding certification of the class before proceeding with the trial on damages and attorney fees.

III
Double Damages
The named appellants contend that they and the members of the class they represent are entitled to a judgment for twice the amount of wages unlawfully withheld. RCW 49.52.050(2) makes it a misdemeanor to "[w]ilfully and with intent to deprive the employee of any part of his wages," fail to pay wages that are due, or to willfully "pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance or contract[.]" RCW 49.52.070 provides that any employer who shall violate RCW 49.52.050(2) "shall be liable in a civil action by the aggrieved employee ... for twice the amount of wages unlawfully ... withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees[.]"
Nonpayment of wages is willful in the context of these statutes "when it is the result of knowing and intentional action [as opposed to inadvertent] and not the result of a bona fide dispute as to the obligation of payment." Chelan County Deputy Sheriffs' Ass'n v. Chelan County, 109 Wash.2d 282, 300, 745 P.2d 1 (1987); Schilling v. Radio Holdings, Inc., 136 Wash.2d 152, 160-61, 961 P.2d 371 (1998). Ordinarily, the question of whether a dispute is bona fide is a question of fact. However, where there is no dispute as to material facts, the case will be resolved on summary judgment. Id. at 160, 961 P.2d 371.
In Department of Labor & Indus. v. Overnite Transp. Co., 67 Wash.App. 24, 34-36, 834 P.2d 638 (1992), an employer that had failed to pay overtime to its employees who worked overtime contended that no overtime was owed because the MWA is preempted by the federal Motor Carrier Act. The record on appeal contained a letter from the Department of Labor and Industries informing the employer that the MWA is not so preempted, citing two federal cases to that effect, both of which distinguished a United States Supreme Court case on which the employer relied. In superior court and on appeal, the employer argued that the two federal cases had been wrongly decided, but the employer did not support that position with any meritorious argument. This court held that in the absence of meritorious argument and citation to relevant authority, the dispute was not bona fide, and that double damages were proper. The instant case is a far cry from Overnight. Although we believe that Todd stretched the case law it cited in support of its defenses, in some instances beyond the limits of credulity, the question of whether the contract ratification incentive paid in this case was properly includable in the employees' regular rate is one of first impression in Washington, and the law on that question has not been extensively litigated around the country. Indeed, Minizza is the only authority on that precise question that has been cited by either party, and our own research, although not exhaustive, has not revealed any other cases on point. We decline to rule that the named appellants are *702 entitled to a judgment for double damages as a matter of law.
On the other hand, Todd failed to brief the question of double damages for purposes of this appeal, and has not asked us to rule in its favor on the issue as a matter of law. Indeed, it was not until oral argument that Todd brought to our attention that case law exists by which summary judgment in its favor on this issue might be appropriate. Moreover, the trial court has not had an opportunity to address the issue, given the basis for its grant of summary judgment to Todd. Accordingly, we remand the issue of whether Todd's failure to pay overtime was based on a bona fide dispute regarding its obligation to do so back to the trial court for determination in conjunction with the trial on damages.

IV
Attorney Fees on Appeal
RCW 49.46.090 provides that any employer who fails to pay wages to which an employee is entitled under the MWA is liable to such employee for the full amount of the unpaid wages and for costs and such reasonable attorney fees as shall be allowed by the court. The named appellants request reasonable attorney fees for this appeal, based on this statute. Todd argues that we should not award fees because the binding arbitration clause contained in the CBA provides that the arbitrator's fees, the cost of any hearing room, and the cost of a court reporter if requested by the arbitrator shall be shared equally by the employer and the union, and that all other expenses shall be paid by the party incurring such expense.
We grant the named appellants' request for reasonable attorney fees for this appeal. This is an action under the MWA properly brought in state court in the first instance by employees in order to enforce their non-negotiable substantive statutory rights, and not a grievance or dispute brought by a union on behalf of its members. Employees are not required to arbitrate their non-negotiable substantive rights granted by the MWA. Schneider v. Snyder's Foods, Inc., 95 Wash.App. 399, 403, 976 P.2d 134 (1999).

V
Conclusion
In summary of our rulings, we reverse the trial court's grant of summary judgment to Todd Shipyards. We reverse the trial court's denial of summary judgment to the named appellants, and remand for entry of summary judgment in their favor on the overtime pay issue. We also reverse the trial court's ruling denying the motion for class certification and remand for reconsideration of that motion in light of this opinion. And we remand for a trial on the issues of damages, double damages, and attorney fees at the trial court level. Finally, we grant the named appellants' request for attorney fees on appeal, upon their timely compliance with RAP 18.1(d).
WE CONCUR: APPELWICK and COLEMAN, JJ.
NOTES
[1] Cf., Seattle Profl Eng'g Employees Ass'n v. Boeing Co., 139 Wash.2d 824, 991 P.2d 1126, 1 P.3d 578 (2000) (MWA required that newly hired employees be paid minimum wage for attendance at one-day "pre-employment" orientation session, even though both employer and employees mistakenly believed that attendance was not legally classified as work, and even though written employment agreement stated employer's intention not to pay employees for attendance; unnecessary to address Boeing's contention that union-represented employees' claims are subject to federal preemption because decision rests exclusively on MWA); United Food & Commercial Workers Union Local 1001 v. Mutual Benefit Life Ins. Co., 84 Wash.App. 47, 49, 925 P.2d 212 (1996) (holding that employees may maintain statutory claim because WMA grants employees nonnegotiable substantive rights regarding wages and payment of wages and claims may be resolved without interpreting collective bargaining agreement) abrogated on other grounds by Seattle Professional Engineering, 139 Wash.2d at 834, 991 P.2d 1126 (2000).
[2] This argument is intertwined with Todd's argument with respect to preemption, which we discuss in the next section of this opinion.
[3] 29 C.F.R. § 778.209 provides in pertinent part that when a bonus payment must be included in the regular rate at which an employee is employed, it must be included in computing his regular hourly rate of pay and overtime compensation, and when the calculation of the bonus amount must be deferred for a period longer than a workweek, it must be apportioned back, once the amount is ascertained, over the workweeks of the period during which it may be said to have been earned. "The employee must then receive an additional amount of compensation for each workweek that he worked overtime during the period equal to one-half of the hourly rate of pay allocable to the bonus for the week multiplied by the number of statutory overtime hours worked during the week."